**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

LEVI RELYEA, individually, and on behalf of himself and all other employees similarly situated,

                            **Plaintiffs,**

v.

                            **CLASS ACTION AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

                            5:19-cv-1491 (BKS/TWD)

**UNITED PARCEL SERVICES, INC.**
                    **Defendant.**

Plaintiff Levi Relyea (hereinafter "Named Plaintiff"), individually, and on behalf of all others similarly situated, by his attorney, Stan Matusz, Esq., alleges and avers as follows:

## NATURE OF CLAIMS

1. This is a proceeding for declaratory relief and monetary damages to: redress the deprivation of rights secured to the Named Plaintiff individually, and on behalf of all other employees similarly situated, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. ("FLSA") and under the New York Labor Law ("NYLL"), for failure to pay promised wages and overtime.

1

**JURISDICTION & VENUE**

2. The original subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. 1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of the Congress providing for the protection of civil rights; under 28 U.S.C § 1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and 29 U.S.C. § 216(b).

3. This Court's pendant jurisdiction of claims arising under the New York State Labor Law is also invoked under 28 U.S.C. § 1367 because the claims arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

4. Original jurisdiction of the Court is also invoked pursuant to 28 U.S.C § 1332, conferring jurisdiction upon this Court where the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and where the parties are citizens of different states.

5. Venue is appropriate in the Northern District of New York, pursuant to §1391(b)(2), since the allegations arose in the District, Defendant does business within this District, Defendant employed the Named Plaintiff in this District, the Named Plaintiff resides in this District, and the Defendant is subject to personal jurisdiction in this District.

## **PARTIES**

6. Defendant, United Parcel Services, Inc., ("UPS" or "Defendant") is an Ohio corporation with its principal office located at 55 Glenlake Parkway, NE, Atlanta, Georgia 30328.

7. Defendant UPS is engaged in the business of domestic and international package delivery.

8. UPS engages in a business that employs Named Plaintiff and those similarly situated, as described herein.

9. Named Plaintiff Levi Relyea is a resident of the State of New York, residing 7 Sunset Ave., Cortland, NY 13045.

10. Plaintiff Relyea has been employed by Defendant UPS from June 12, 2017 to date at the UPS facility in Ithaca, New York.

11. At all times relevant to this action, Defendant UPS employed the Named Plaintiff and those similarly situated within the meaning of 29 U.S.C. § 203(d) and comprised an "enterprise" engaged in interstate commerce or the production of goods for commerce as defined in 29 U.S.C. §§ 203(r) and (s).

12. At all relevant times, Named Plaintiff and those similarly situated were "employees" covered by the New York Labor Law, and UPS was an "employer" of Named Plaintiff and those similarly situated, as those terms are defined by the New York Labor Law §§ 651 et seq., §190 et seq. and applicable regulations.

13. At all relevant times, Named Plaintiff was an employee of Defendant UPS under the FLSA.

## FACTUAL BACKGROUND

14. Defendant UPS is a multinational corporation that claims to be the world's largest package delivery company with revenues of $72 billion in fiscal year 2018.

15. Plaintiff Relyea and similarly situated employees work, or have worked, for UPS as hourly, part-time, seasonal and/or temporary Pre-loaders, Package Handlers, Drivers, Cover Drivers and Air Drivers.

16. As explained herein, Named Plaintiff and similarly situated UPS employees are subject to multiple UPS policies that deprive them of minimum wages, straight time, and overtime pay in violation of the Fair Labor Standards Act and New York Labor Law.

## POLICY #1: UPS POLICY OF DENYING WAGES FOR ON-DUTY WAITING TIME DURING "AIR DELAYS"

17. When Named Plaintiff and similarly situated UPS employees report to work, they are frequently told by UPS managers that there is an "air delay."

18. During "air delays," UPS has a policy of not allowing Named Plaintiff and similarly situated UPS employees to punch-in to work via their hand-held, portable electronic device, known as a DIAD ("Delivery Information Acquisition Device"). Instead, UPS managers move back the start time of

the shift and instruct Named Plaintiff and similarly situated UPS employees to wait for the air delivery to arrive before punching in.

19. The length of air delays is unpredictable. Delays can be as brief as ten (10) minutes and last longer than (1) hour.

20. During air delays, Named Plaintiff and similarly situated UPS employees are directed to stand by a conveyor belt to wait for the delayed packages. They are not allowed to leave the premises, and they are not able to use the time effectively for their own purposes.

21. When the aforementioned situation occurs, UPS fails to pay Named Plaintiff and those similarly situated UPS employees for the compensable time spent waiting for the air freight delivery.

22. As a result of the aforementioned policy, UPS fails to pay Named Plaintiff and those similarly situated UPS employees for all hours worked, including time and one half for each hour worked in excess of forty (40) in one week, in violation of the FLSA, 29 C.F.R. § 785.14-16 and New York Labor Law, 12 NYCCR 142-2.1(b).

23. Between August 2017 to date, UPS applied this policy to Named Plaintiff on no less than fifteen (15) occasions, resulting in Named Plaintiff being deprived of $270.00 - $337.00 in straight time and overtime hours.

### POLICY #2: UPS POLICY OF NOT COMPENSATING DRIVERS FOR PRE-DRIVING WORK ACTIVITY

24. When Named Plaintiff and similarly situated UPS employees are working as drivers, UPS managers require them to obtain information notices,

driver release bags and traction pads, and to clean their trucks and/or do required computer training prior to punching in on their hand held device (DIAD).

25. After these work activities are performed, the UPS manager gathers the drivers together for a meeting and then instructs them to punch in to work on their DIAD.

26. The effect of this policy is that UPS only begins paying Named Plaintiff and similarly situated UPS drivers for work performed after they start driving their routes.

27. UPS uses this policy to deprive Named Plaintiff and similarly situated UPS drivers for the compensable time spent working prior to driving their route.

28. Named Plaintiff was subjected to this policy on almost every day that he has worked for UPS.

## POLICY #3:  UPS TIME-SHAVING POLICY

29. UPS has a policy of systematically reducing the hours of Named Plaintiff and similarly situated UPS employees even after they are clocked-in to work via their DIAD ("Delivery Information Acquisition Device").

30. UPS's policy is evidenced, in part, by the discrepancies between time card data generated with DIAD clock-in times and the pay stubs UPS generates for the corresponding weeks of work.

31. By way of example, and without limitation, Named Plaintiff was not paid for 2.06 hours of work recorded on his electronic time card for the week of 6/30/19 – 7/05/19.

32. For the week of 7/07/19 to 7/13/19, Named Plaintiff was not paid for 1.28 hours of work that was recorded on his electronic time card.

33. For the week of 7/14/19 to 7/20/19, Named Plaintiff was not paid for 0.70 hours of work that was recorded on his electronic time card.

34. In or about May 2019, and in response to complaints from UPS employees about these discrepancies, UPS responded by creating a new policy that severely restricts the ability of Named Plaintiff and other employees to access their electronic time card data.  UPS policy now states that: *"Previous week time card data will not be available after Thursday evening of the following week."*

35. UPS's policy change was done to obfuscate and cover-up UPS's rampant deprivation of pay to Named Plaintiff and similarly situated UPS employees.

### POLICY #4:  UPS POLICY OF DENYING REPORTING PAY

36. When Named Plaintiffs and similarly situated UPS employees report to work for UPS, they are often told by UPS managers that there is no work to perform and instructed to wait for as long as thirty (30) minutes to one (1) hour.

37. After waiting to work at the UPS premises, UPS often instructs the Named Plaintiff and similarly situated employees to leave because of the lack of work.

38. In these situations, UPS management has a policy of keeping the DIADs of Named Plaintiff and similarly situated UPS employees turned-off so employees cannot punch-in.

39. The net effect of UPS's policy is to make it appear that Named Plaintiff and those similarly situated never worked that particular day.

40. UPS fails to pay Named Plaintiff and similarly situated UPS employees the wages owed for this compensable time worked, in violation of federal and state wage and hour laws.

41. UPS applied this policy to Named Plaintiff approximately 6 times.

### **POLICY # 5: UPS POLICY OF DENYING FOUR (4) HOUR MINIMUM REPORTING PAY REQUIRED BY THE NEW YORK LABOR LAW**

42. Named Plaintiff and similarly situated part-time, temporary and seasonal UPS employees do not have guaranteed hours of work.

43. Named Plaintiffs and similarly situated employees are frequently asked to report to work by UPS, but given a small amount of work to perform. After working for as few as one (1) or two (2) hours on a given day, UPS managers routinely instruct Named Plaintiff and similarly situated UPS employees to leave work because there is no more work to be perform. This occurs despite the fact that Named Plaintiff and similarly situated UPS employee remain able and willing to work.

44. New York Labor Law, 12 N.Y.C.R.R. § 142-2.3 requires that: *"An employee who by request or permission of the employer reports for work on any given day shall be paid for at least four hours, or the number of hours in the regularly scheduled shift, whichever is less, at the basic minimum wage."*

45. However, when the aforementioned occurs, UPS has a policy of only paying the Named Plaintiff and similarly situated UPS employees for the actual hours they worked, rather than the four (4) hours of minimum pay required by the New York Labor Law, 12 N.Y.C.R.R. § 142-2.3.

46. By way of example, and without limitation, UPS failed to pay Named Plaintiff the four (4) hours of minimum pay required by the New York Labor Law on July 6, 2019, July 8, 2019, July 11, 2019, July 13, 2019, July 16, 2019, July 17, 2019 and July 20, 2019.

47. On those corresponding dates, UPS only paid Named Plaintiff for 2.41, 1.69, 1.05, 3.05, 1.38, 2.35 and 2.07 hours of work, respectively, rather than the four (4) hours of minimum pay required by the NYLL.

48. In failing to adhere to the New York Labor Law on just those seven (7) days in a two (2) week period, UPS deprived Named Plaintiff of no less than $102.15 in wages.

49. UPS has used this policy to deprive Named Plaintiff and similarly situated UPS employees of hundreds of thousands of dollars in wages over the past six (6) years throughout New York State.

50. UPS's policy of disregarding the four (4) hour minimum pay requirement of the New York State Labor Law is pervasive, longstanding and willful. Indeed, UPS's policy has been the subject of litigation in other jurisdictions with minimum reporting pay requirements.

## **COLLECTIVE ACTION ALLEGATIONS**

51. Named Plaintiff brings Counts I and II of this Complaint, *supra*, under Section 216 of the FLSA, 29 U.S.C. § 216(b), on behalf of himself and the following employees:

    > All current and former hourly, part-time, temporary and seasonal Preloaders, Package Handlers, Drivers, Cover Drivers and Air Drivers who worked for UPS in New York State and were paid less than the federal minimum wage for any hour of work, and/or less than one-half times their hourly rate for any hour of overtime, at any time within the three (3) years prior to the filing of this action (hereinafter "Collective Action Members").

52. These claims are properly brought as a Section 216 Collective Action because Named Plaintiff and the Collective Action Members are similarly situated in that:

    a. The Collective Action Members were all employed by UPS as hourly, part-time, temporary, seasonal Preloaders, Package Handlers, Drivers, Cover Drivers and Air Drivers;

    b. The Collective Action Members all worked for UPS in New York State during the last three years;

    c. The Collective Action Members were all subjected to the same policies and practices, namely: (1). UPS's policy of failing to pay

Collective Action Members for on-duty waiting time during air delays; (2) UPS's policy practice of failing to pay Collective Action Members who were drivers for compensable time spent working prior to delivery runs; (3). UPS's policy of shaving reported compensable working time of Collective Action Members. and (4). UPS's policy of failing to pay Collective Action Members who report to work but are then told to leave because of lack of work;

d. The Collective Action Members' claims, and any defenses thereto, may be established through common proof and representative evidence.

**CLASS ACTION ALLEGATIONS UNDER NEW YORK LABOR LAW**

53. The claims arising under the NYLL, Counts III and IV of this Complaint, *supra*, are properly maintainable as a class action under Federal Rule of Civil Procedure 23 ("Rule 23") under subsections (1), (2), and (3).

54. The Class is defined as:

> Those current and former hourly, part-time, temporary and seasonal Preloaders, Package Handlers, Drivers, Cover Drivers and Air Drivers of UPS employed since December 3, 2013 in New York State, who were not paid for all hours suffered or permitted to work, including overtime pay for hours worked more than forty (40) (hereinafter referred to as the "NYLL Class" or "Class Members").

55. Upon information and belief, the Class size is comprised of more than two thousand (2,500) current and former UPS employees though out New York State, which makes the Class so numerous that joinder of all members is impracticable. The Class, however, is readily identifiable from

information and records in the possession, custody and control of Defendant UPS.

56. The NYLL Class is maintainable under subsection (3) of Rule 23(b) because common questions of law and fact predominate among the Class Members and because the class action is superior to other available methods for the fair and efficient adjudication of the controversy. These common questions of law and fact include, but are not limited to:

   i. Whether UPS has a policy of failing to pay Class Members for waiting time during air delays;

   ii. Whether UPS has a policy of failing to pay drivers who are Class Members for compensable time working prior to delivery runs;

   iii. Whether UPS has a policy of shaving reported working time of Class Members;

   iv. Whether UPS has a policy of failing to pay Class Members who report to work, but are then told to leave because of lack of work;

   v. Whether UPS has a policy of ignoring the four (4) hours of minimum pay requirement of the New York Labor Law, 12 NYCCR § 142-2.3;

   vi. Whether UPS failed to pay Class Members all minimum and straight time wages due under the New York Labor Law for each of the aforementioned practices; and

      vii. Whether UPS failed to pay Class Members at a rate of 1.5 times their hourly rates for all overtime hours worked under the New York Labor Law as a result of the aforementioned practices.

57. The claims of Named Plaintiff Relyea are typical of the claims of the Class. Like all of the Class Members, Named Plaintiff was subjected to each of the UPS policies set forth above in the preceding Paragraph. In addition, the defenses and legal theories UPS will likely assert in response to this action will likely apply to all Class Members.

58. The Named Plaintiff will fairly and adequately represent the interests of the NYLL Class because he is similarly situated to the Class Members, his claims are typical of, and concurrent to, the claims of the other Class Members, and there are no known conflicts of interest between the Named Plaintiff and the other Class Members.

59. The Class Counsel, Stan Matusz, Esq., is qualified and able to litigate the Class Members' claims. Class Counsel has concentrated his practice in employment litigation and has more than two decades years of experience prosecuting, defending and serving as a neutral in hybrid NYLL class/FLSA collective actions.

60. A Class action is maintainable under subsection (1) of Rule 23(b) because prosecuting separate actions by individual Class Members would create the risk of inconsistent adjudications, resulting in incompatible standards of conduct for Defendant.

61. Class action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, or expense.

## AS AND FOR A FIRST CAUSE OF ACTION:
## FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF THE FLSA

62. Named Plaintiff realleges the above paragraphs as if fully restated herein.

63. At all times relevant to this Complaint, UPS was an "employer," and an enterprise engaged in commerce," as defined by the FLSA. 29 U.S.C. § 203(d), (s).

64. At all times relevant to this Complaint, Named Plaintiff and Collective Action Members were "employees" entitled to protections of the FLSA. 29 U.S.C. § 203(e).

65. At all relevant times in this Complaint, UPS was required to pay Named Plaintiff and Collective Action Members a minimum wage for all of the hours they worked. 29 U.S.C. § 2016(a)(1)(C).

66. UPS violated the FLSA by failing to pay Named Plaintiff and Collective Action Members for all hours they worked, as a result of the following policies: (i). UPS's policy of failing to pay Collective Action Members for compensable on-duty waiting time during air delays; (ii). UPS's policy of

failing to pay Collective Action Members who were drivers for time spent working prior to delivery runs; (iii). UPS's policy of shaving reported working time of Collective Action Members; and (iv). UPS's policy of failing to pay Collective Action Members who report to work, but are then instructed to leave because of lack of work.

67. UPS's policies were applied to all Collective Action Members in New York State. Accordingly, this action is maintainable as an FLSA Collective Action, pursuant to 29 U.S.C. § 201, et seq.

68. UPS was aware of the requirements of the FLSA and knowingly and willfully violated its obligations under the FLSA and is liable to Named Plaintiffs and Collective Action Members.

## AS AND FOR A SECOND CAUSE OF ACTION: FAILURE TO PAY OVERTIME IN VIOLATION OF THE FLSA

69. Named Plaintiff realleges the above paragraphs as if fully restated herein.

70. At all times relevant to this Complaint, UPS was an "employer," and an enterprise engaged in commerce," as defined by the FLSA. 29 U.S.C. § 203(d), (s).

71. At all times relevant to this Complaint, Named Plaintiff and Collective Action Members were "employees" entitled to protections of the FLSA. 29 U.S.C. § 203(e).

72. At all relevant times in this Complaint, UPS was required to pay Named Plaintiff and Collective Action Members one and one-half times their

regular rate of pay for all hours worked in excess of forty (40) per week. 29 U.S.C. § 207.

73. UPS violated the FLSA by failing to pay Named Plaintiff and Collective Action Members one and one half times their regular rate of pay for all hours worked in excess of forty (40) per week as a result of the following policies: (i). UPS's policy of failing to pay Collective Action Members for compensable on-duty waiting time during air delays; (ii) UPS's policy of failing to pay Collective Action Members who were drivers for time spent working prior to delivery runs; (iii). UPS's policy of shaving reported working time of Collective Action Members; and (iv). UPS's policy of failing to pay Collective Action Members who report to work, but are then instructed to leave because of lack of work.

74. UPS's policies were applied to all Collective Action Members in New York State.

75. Accordingly, this action is maintainable as an FLSA Collective Action, pursuant to 29 U.S.C. § 201, et seq.

76. UPS was fully aware of the overtime requirements of the FLSA at all times relevant to this Complaint and willfully violated its obligations under the FLSA.

## AS AND FOR A THIRD CLAIM:
## NEW YORK LABOR LAW CLASS ACTION FOR FAILURE TO PAY MINIMUM AND STRAIGHT-TIME WAGES

77. Named Plaintiff and NYLL Class Members reallege the above paragraphs as if fully restated herein.

78. At all times relevant to this Complaint, Named Plaintiff and NYLL Class Members were employees of UPS under the New York Labor Law.

79. UPS has willfully failed to pay minimum, straight and agreed-upon wages due, as set forth in the preceding paragraphs of this Complaint, in violation of the NYLL.

80. UPS failed to pay Named Plaintiff and NYLL Class Members minimum, straight and agree-upon wages for all hours worked as a result of the following policies: (i). UPS's policy of failing to pay NYLL Class Members for waiting time during air delays; (ii). UPS's policy of failing to pay drivers who were NYLL Class Members for time spent working prior to delivery runs; (iii). UPS's policy of shaving reported time worked for NYLL Class Members; and (iv). UPS's policy of failing to pay NYLL Class Members who report to work but are then told to leave because of lack of work and (v). UPS's policy of failing to pay NYLL Class Members the four (4) hours of minimum time required by the New York Labor Law, 12 NYCRR § 142-2.3;

81. UPS willfully violated its obligations under the NYLL and is liable to Named Plaintiffs and NYLL Class Members.

82. Due to UPS's violations of the NYLL, Named Plaintiffs and NYLL Class Members are entitled to recover compensation for unpaid wages, an additional amount as liquidated damages, and reasonable attorneys' fees, costs and disbursements of this action, pursuant to NYLL Article 19 § 663.

**AS AND FOR A FOURTH CLAIM:**
**NEW YORK LABOR LAW CLASS ACTION FOR FAILURE TO PAY OVERTIME**

83. Named Plaintiff and NYLL Class Members reallege the above paragraphs as if fully restated herein.

84. At all times relevant to this Complaint, Named Plaintiff and Class Members were employees of UPS under the New York Labor Law.

85. Under the overtime provisions of Article 19 of the NYLL and its supporting regulations, 12 NYCCR § 142-3.2, UPS was required to pay Named Plaintiff and NYLL Class Members time and one-half of the regular rate of pay for any work in excess of forty (40) in a workweek.

86. Named Plaintiff and NYLL Class Members regularly worked more than forty (40) hours per week for UPS.

87. UPS failed to pay Named Plaintiff and NYLL Class Members overtime wages for all hours worked in excess of forty (40) as a result of the following policies: (i). UPS's policy of failing to pay NYLL Class Members for compensable waiting time during air delays; (ii). UPS's policy of failing to pay drivers who were NYLL Class Members for compensable time spent loading, sorting and packing trucks prior to delivery runs; (iii). UPS's

policy of shaving reported working time of NYLL Class Members; (iv). UPS's policy of failing to pay NYLL Class Members who report to work but are then told to leave because of lack of work; and (v). UPS's policy of failing to pay NYLL Class Members the four (4) hours of minimum time required by the New York Labor Law, 12 NYCCR 142-2.3.

88. As a result, UPS has violated, and continues to willfully violate, NYLL Article 19 § 650, et seq., and the supporting New York State Department of Labor Regulations.

89. Due to UPS's violations of the NYLL, Named Plaintiffs and NYLL Class Members are entitled to recover compensation for unpaid wages, an additional amount as liquidated damages, and reasonable attorneys' fees, costs and disbursements of this action, pursuant to NYLL Article 19 § 663.

## **TRIAL BY JURY**

90. Named Plaintiff, Collective Action and NYLL Class Action Members demand a trial by jury on all claims properly triable by a jury.

**WHEREFORE**, the Named Plaintiff respectfully requests that upon trial this Court enter judgment against UPS in favor of himself and those similarly-situated, and that he and those similarly situated be given the following relief:

A. An order granting conditional certification to the FLSA Collective Action and NYLL Class and appointing Named Plaintiff and his counsel as class representative and class representation.

B. An order preliminarily and permanently restraining Defendant UPS from engaging in the aforementioned pay violations;

C. An award of the value of unpaid wages, overtime and fringe benefits to Named Plaintiff, FLSA Collective Action Members, and Members of the NYLL Class;

D. An award of liquidated damages under the FLSA equal to 100% of the sum of the amount of the wages and overtime which were not properly paid to the Named Plaintiff and Collective Action Members;

E. An award of liquidated damages under the NYLL equal to 100% of the sum of the amount of wages and overtime which were not properly paid to Named Plaintiff and Members of the NYLL Class.

F. An award of reasonable attorneys' fees, expenses, expert fees, disbursements and costs incurred in vindicating the rights of Named Plaintiffs and those similarly-situated.

G. An award of pre and post judgment interest;

H. Granting such additional relief as this Court deems just, proper and equitable.

Dated: Ithaca, New York
December 3, 2019

/s/Stan Matusz
Stan Matusz, Esq.
Bar Roll # 520502
*Attorney for Named Plaintiff, individually, and all others similarly situated*
29 Murfield Drive
Ithaca, NY 14850
607-319-5513
stanmatusz@gmail.com